**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**COFFEE MANIA, LLC,**

                    **Plaintiff,**

          v.                                **5:15-CV-823
                                                    (FJS/DEP)**

**COFFEEMANIA BRYANT PARK, LLC,**

                    **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OFFICE OF ROBERT E. PURCELL**<br>211 West Jefferson Street, Suite 24<br>Syracuse, New York 13201<br>Attorney for Plaintiff | **ROBERT E. PURCELL, ESQ.** |
| **DAVIS & GILBERT LLP**<br>1740 Broadway<br>New York, New York 10019<br>Attorneys for Defendant | **JAMES R. LEVINE, ESQ.** |
| **BODMAN PLC**<br>201 South Division Street, Suite 400<br>Ann Arbor, Michigan 48104<br>Attorneys for Defendant | **JUSTIN P. BAGDADY, ESQ** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Pending before the Court are Plaintiff's motion to reopen this case, *see* Dkt. No. 45, and Defendant's cross-motion to enforce the settlement agreement, *see* Dkt. No. 46.

## II. BACKGROUND

Plaintiff Coffee Mania is a New York limited liability company with its principal place of business in New York. *See* Dkt. No. 46-1 at 4. Plaintiff currently operates two drive-in coffee shops, in Cortland and Homer, New York, and does not own a U.S. trademark for its name. *See id.* Defendant Coffeemania Bryant Park is a New York limited liability company that is in the process of opening a restaurant in Manhattan. *See id.*

In July 2014, Plaintiff sent Defendant a "cease and desist" letter. *See id.* at 4-5. In that letter, Plaintiff stated that Defendant's intent to open a restaurant under a name so similar to Plaintiff's coffee shops would "violate Plaintiff's common law trademark rights." *See id.* at 5. In the year following Defendant's receipt of the letter, the parties engaged in discussions about how to proceed. *See id.*

On May 13, 2015, after a year of unsuccessful discussions, Plaintiff filed a complaint in New York Supreme Court, County of Cortland. *See* Dkt. No. 45 at 2 n.1. In that complaint, Plaintiff asserted, among other things, a federal cause of action under the Lanham Act, 15 U.S.C. § 1125(a). *See id.* On the basis of that federal cause of action, Defendant removed the case from state court to this District on July 14, 2015. *See id.*

Following removal, Plaintiff filed an amended complaint, in which it deleted the federal cause of action, *see* Dkt. No. 7, Dkt. No. 10-1 at 3, and, thereafter, filed a motion to remand the case to state court, *see* Dkt. No. 10. Simultaneously, Defendant filed a motion to dismiss for improper venue or, in the alternative, to transfer venue to the Southern District of New York. *See* Dkt. No. 9.

In a Memorandum-Decision and Order dated March 21, 2016, this Court denied Defendant's motion to transfer venue and also denied, without prejudice and with leave to renew, Plaintiff's

motion to remand. *See* Dkt. No. 26 at 9. Furthermore, the Court directed the parties to "engage in discovery limited to . . . the citizenship of the parties and the amount in controversy" within thirty days of the date of the Memorandum-Decision and Order. *See id.*

Following these events, the parties agreed to select Phil Frankel, a partner at Bond, Schoeneck & King PLLC, as a mediator and agreed to participate in a mandatory mediation session at his office. *See id.* The first mediation session occurred on April 15, 2016, and lasted approximately six hours. *See* Dkt. No. 35 at 1. At its conclusion, Mr. Frankel reported to the Court that the parties were "close to settlement" but needed to schedule another mediation session. *See id.*

On June 7, 2016, the parties met for their second mediation session with Mr. Frankel, which lasted approximately eight hours. *See* Dkt. No. 46-1 at 6. At the second session, Defendant and its representatives were only available by telephone. *See id.* However, "the parties, counsel for the parties, and the mediator agreed" that Defendant did not need to travel from Michigan to New York again. *See id.* Following the second session, Mr. Frankel reported to the Court that the case had settled and that the "Settlement Agreement and Stipulation for Dismissal [were] being prepared and [would] be submitted for the court's consideration." *See* Dkt. No. 37.

On July 7, 2016, the parties participated in a telephone conference with Magistrate Judge Peebles, and Mr. Frankel "filed a report . . . indicating that [the] matter had settled." *See* Text Minute Entry dated July 9, 2016. On July 8, 2016, this Court entered an Order of Dismissal by Reason of Settlement. *See* Dkt. No. 38. In that Order, this Court stated that "the parties have settled . . . or are in the process of doing so." *See id.* (citing Dkt. No. 37). The Court also stated that, pursuant to N.D.N.Y. L.R. 68.2(a), an application to reopen the case would be permitted if it were filed within 60 days of the date of the Order or within any extended time frame that the Court

granted prior to the expiration of the original 60-day time frame. *See id.* at 1-2.

Magistrate Judge Peebles held a second telephone conference with counsel on September 9, 2016, and scheduled a follow-up telephone conference for October 13, 2016. *See* Text Minute Entry dated September 9, 2016.

On October 13, 2016, during their follow-up telephone conference with Magistrate Judge Peebles, the parties informed him that they were "at an impasse with their settlement negotiations." *See* Text Minute Entry dated October 14, 2016. Consequently, Magistrate Judge Peebles granted Plaintiff an extension until October 21, 2016, to file a letter requesting that the Court reopen the case. *See id.*

On October 14, 2016, Plaintiff filed a motion, requesting that the Court reopen the case and issue a new scheduling order. *See* Dkt. No. 45. In its motion, Plaintiff stated that "settlement negotiations [had] reached an impasse and further negotiations . . . would be fruitless." *See id.* at 1. Plaintiff also asserted that it intended to "file a motion for leave to amend its Complaint" to re-assert the federal Lanham Act claim that it had previously deleted from its original complaint, when it filed its amended complaint. *See id.* Plaintiff further stated that an amendment re-asserting the sole federal cause of action would "give this Court clear federal question subject matter jurisdiction[,]" as well as "render moot any need for discovery or any ruling regarding the existence of diversity subject matter jurisdiction." *See id.* at 2.

On November 11, 2016, Defendant filed its cross-motion to enforce the settlement agreement. *See* Dkt. No. 46. In its motion, Defendant stated that, although Plaintiff's counsel had previously told this Court that "the parties had agreed on all material terms and the matter had settled," Plaintiff was now refusing to honor that agreement "unless Defendant capitulate[d] to a

new set of demands that were not part of the agreement." *See* Dkt. No. 46-1 at 4. Defendant requested that this Court deny Plaintiff's motion and "forever close" this case. *See id.*

Finally, on November 28, 2016, Plaintiff filed its opposition to Defendant's cross-motion. *See* Dkt. No. 47. Plaintiff asserted that "there was no clear indication of the particular settlement document Defendant [sought] to enforce." *See id.* at 5. Consequently, Plaintiff argued that this Court should deny Defendant's cross-motion and grant its motion to reopen this case and allow it to amend its complaint. *See id.*

## III. DISCUSSION

### A. Plaintiff's motion to reopen this case

In its Order of Dismissal by Reason of Settlement, the Court ordered that "[a]ny application to reopen this case must be filed within sixty (60) days of the date of this Order . . . unless this Court has extended this period prior to its expiration[.]" *See* Dkt. No. 38 at 1-2. The parties requested an additional thirty days for negotiations prior to the expiration of the 60-day period set forth in the Court's Order of Dismissal, which the Court granted. *See* Text Minute Entry dated September 9, 2016. Thereafter, the Court continued a "stay of the deadline for reopening the case pending further order of the court." *See id.* Finally, Magistrate Judge Peebles lifted the stay and instructed Plaintiff to file its motion to reopen the case on or before October 21, 2016. *See* Dkt. No. 45. As noted, Plaintiff complied with this Order by filing its motion on October 14, 2016. *See id.*

Accordingly, because Plaintiff sought to reopen the case within the required time frame, the Court grants its motion.

**B.     Subject matter jurisdiction**

As noted, after Defendant removed this action from state court to this District, Plaintiff filed an amended complaint, in which it removed the only federal cause of action that it had asserted in its original complaint. *See* Dkt. No. 7. Although the Court previously directed the parties to conduct limited discovery regarding the issue of diversity jurisdiction, Plaintiff's filing of its amended complaint did not divest this Court of jurisdiction over this matter even though the only claims that remained in this action were state-law claims. *See In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015) (noting that, "for the purpose of analyzing statutory subject-matter jurisdiction, the Supreme Court has treated amended complaints in removal cases with flexibility. For example, 'when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction.'" (quoting [*Rockwell Int'l Corp. v. United States*, 549 U.S. 457,] 474 n.6, 127 S. Ct. 1397 [(2007)])); *Bennett v. Beiersdorf, Inc.*, 889 F. Supp. 46, 48 (D. Conn. 1995) (stating that "[a] plaintiff whose case has been removed to federal court cannot defeat federal jurisdiction by amending her complaint to excise the federal claims" (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985) (citing, *inter alia*, *Hazel Bishop Inc. v. Perfemme, Inc.*, 314 F.2d 399, 403 (2d Cir.1963))))).

The Court concludes, therefore, that, because it had jurisdiction over this matter at the time of removal, it continues to have jurisdiction over this matter, despite Plaintiff's post-removal filing of an amended complaint.

**C.     Defendant's cross-motion to enforce the parties' settlement agreement**

To support its cross-motion, Defendant argues that the Court should enforce the parties' settlement agreement because the parties have agreed to all material terms – either orally or via email – and that is sufficient to bind both parties to the agreement.  Alternatively, Defendant asserts that, even if the Court finds there is no binding settlement agreement, the parties nevertheless reached a binding preliminary agreement.  *See* Dkt. No 46-1 at 6, 14.

With regard to its first argument, Defendant asserts that the parties agreed on "all material terms one would expect to see in the settlement of a trademark matter" in addition to multiple "trivial matters"[.]"  *See id.* at 7.  Furthermore, Defendant argues that combining these terms into a fully-executed document is not a prerequisite for enforcement.  *See id.* at 9 (citing *Winston v. Mediafare Enter. Corp.*, 777 F.2d 78, 80 (2d Cir. 1993) ("Simply because the parties contemplate memorializing their agreement in a formal document does not prevent their agreement from coming into effect before written documents are drawn up . . . if the parties have settled on the contract's substantial terms, a binding contract will have been created, even though they also intended to memorialize it in writing[.]")).  Instead, Defendant contends that, to enforce an agreement not yet memorialized in writing, a court must look to the "words and deeds" of the parties that "constitute objective signs in a given set of circumstances" to determine whether the parties formed a contract.  *See* Dkt. No. 46-1 1t 10 (quoting *Winston*, 777 F.2d at 80).  A court performs this analysis by looking at four factors, all of which, according to Defendant, are present in this case.  *See* Dkt. No. 46-1 at 10; *see also id*. at 13 (citing *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170 (E.D.N.Y. 2006)).  Consequently, Defendant asserts that "Plaintiff's later protestations and new demands should not influence the Court when Plaintiff orally agreed to the terms and also where its 'email

settlement acceptance is sufficient to bind [it].'" *See* Dkt. No. 46-1 at 13.

Alternatively, Defendant argues that, at a minimum, the parties reached a binding preliminary agreement. *See id.* at 14. Defendant asserts that, when there is an unsigned settlement agreement, New York law recognizes two additional means of enforcement: (1) a Type I agreement and (2) a Type II agreement. *See id.* Defendant contends that, in this case, the parties' agreement meets the conditions of a Type I agreement because "the parties reached an oral agreement at mediation and then confirmed that agreement via email" in June. *See id.* (citing *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549 (2d Cir. 1998)). Defendant also insists that the parties' agreement meets the conditions of a Type II agreement and that Plaintiff has breached the terms of that agreement because it "has not negotiated . . . in good faith." *See id.* at 15 (citing *Network Enter. v. APBA Offshore Prod.*, 427 F. Supp. 2d 463, 485 (S.D.N.Y. 2006)).

In response, Plaintiff argues that there is no comprehensive settlement agreement for the Court to enforce. *See* Dkt. No. 47 at 5. In this regard, Plaintiff contends that, although the parties discussed and agreed on terms in April 2016, and again in June 2016, none of these terms were consolidated into a signed, formal settlement agreement. *See id.* at 5, 10-13. Furthermore, Plaintiff asserts that the "objective evidence strongly indicates that there was no complete, binding settlement agreement as of the telephone status conference held July 7, 2016" as the Court's text minute entry indicates that "Plaintiff's counsel recently sent the *proposed draft* settlement agreement to the defendant." *See id.* at 6 (emphasis added). Consequently, Plaintiff asserts that the settlement agreement that Defendant is asking the Court to enforce is "nebulous" at best and, therefore, cannot be binding on either party. *See id.* at 5.

In addition, Plaintiff argues that Defendant's requested enforcement of a preliminary

agreement is "foolish." *See* Dkt. No. 47 at 20 n.9. Plaintiff asserts that there is "no evidence of record regarding any 'oral agreement at mediation'" and that, even if there were, this District's rules prohibit it. *See id.* at 19-20 (citing N.D.N.Y. L.R. 83.11-5(d)(2)). Furthermore, both parties agreed to a variety of terms on June 7, 2016; and, then, on June 20, 2016, Defendant added two clauses to the agreement that were not part of the June 7, 2016 terms. *See id.* at 20. Consequently, Plaintiff argues that Defendant has failed "to identify the specific 'Type II' preliminary agreement it seeks to enforce" because there are two different June agreements. *See id.*

Finally, Plaintiff argues that, even if there were a complete, binding settlement agreement, New York law would prohibit its enforcement. *See* Dkt. No. 47 at 22. Section 2104 of New York Civil Practice Law and Rules provides that an agreement between parties or their attorneys "'relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in writing subscribed by him or his attorney or reduced to the form of an order and entered.'" *See id.* at 23 (quoting N.Y. C.P.L.R. 2104). Plaintiff argues that Defendant has not satisfied any of these conditions. *See id.* Finally, Plaintiff asserts that, pursuant to New York's statute of frauds, "any alleged agreement is rendered void" due to the statute's requirements that the agreement be performed within one year and that there must be a subscription to the agreement. *See id.* at 23-24 (citing N.Y. Gen. Oblig. Law 5-701(a)).

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) (citations omitted). To establish the existence of such an agreement, "'there must be an "offer, acceptance, consideration, mutual assent, and intent to be bound."'" *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) (quotation omitted). In addition, there must be a "meeting

of the minds" on all essential terms of the agreement. *See AIG Mex. Seguros Interamericana, S.A. de C.V. v. M/V Zapoteca*, 508 F. App'x 58, 59 (2d Cir. 2013) (summary order) (citing *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) (requiring "a meeting of the minds" only "on the essential terms" of a contract)) (other citation omitted).

In addition, in determining what constitutes a binding agreement, courts are not confined to the express writings. *See Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Parties are "free to enter into a binding contract without memorializing their agreement in a fully executed document." *Id.* Furthermore, the parties' intent to commit their agreement to a writing does not prevent a binding contract from forming prior to the execution of the writing. *See id.* (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984)) (other citations omitted).

In this case, the parties refer to three groups of settlement terms: (1) terms from the mediation session held on April 15, 2016 ("April Terms"); terms from the mediation session held on June 6, 2016 ("June Terms"); and (3) terms that Defendant added to the June Terms on June 20, 2016 ("Email comments"). *See* Dkt. No. 46-1 at 6-7; Dkt. No. 47 at 5-6. Based on the arguments that Defendant asserts in support of its cross-motion, it appears that the agreement that Defendant seeks to enforce is the one that combines the April Terms and the June Terms. *See* Dkt. No. 46-1 at 12-13.

To determine whether there was a "meeting of the minds" on all of the terms, a court must find that there was "'literally nothing left to negotiate'." *Winston*, 777 F.2d at 82 (quoting *R.G. Group*, 751 F.2d at 76). That includes even the most minor changes. *See id.* This is because "[i]t is not for the court to determine retrospectively that at some point in the evolution of a formal

document that the changes being discussed became so 'minor' or 'technical' that the contract was binding despite the parties' unwillingness to have it executed and delivered." *Id.* at 83; *see also H&R Block Tax Servs., LLC v. Strauss*, No. 1:15-CV-0085, 2016 WL 5107114, *4 (N.D.N.Y. Sept. 20, 2016) (stating that "[t]he Second Circuit has given great weight to the terms of a draft settlement agreement in determining whether the drafting party intended to be bound absent a signed writing") (citing *Ciaramella [v. Reader's Digest Ass'n, Inc.*,] 131 F.3d [320,] 324 [(2d Cir. 1997)] ("We must give . . . statements [in proposed settlement agreements] considerable weight, as courts should avoid frustrating the clearly-expressed intentions of the parties.")).

In *Winston*, the parties exchanged multiple drafts with each other, at times recommending simple language changes. *See Winston*, 777 F.2d at 83. Under these circumstances, the court held that the parties' continual redrafting indicated that the "changes made must [have been] deemed important enough to the parties to have delayed final execution and consummation of the agreement." *Id.* at 82-83. Furthermore, the court noted that the parties' wish to "create a writing that [was] satisfactory to both sides in every respect" was their choice and was evidenced in their wish to continually redraft the terms of their proposed agreement. *Id.* Consequently, the court determined that, if it were to hold that the parties' agreement was binding, it would have "deprive[d] the parties of their right to enter into *only the exact contract they desired.*" *Id.* at 83 (emphasis added).

Similarly, in *Strauss*, the parties communicated via email and telephone about the terms of a settlement, and both parties had accepted the draft and agreed to move forward with finalizing the document for a signature. The parties submitted this full, formal written settlement agreement, absent the defendant's signature, to the court. The court held, however, that "because the Draft Settlement Agreement" that the plaintiff had prepared "indicate[d] that Plaintiff did not consider

-11-

itself bound by any agreement reached prior to the execution of the formal settlement documents, the first Winston factor weigh[ed] heavily against enforcement"; and, ultimately, the court found that there was no binding settlement agreement for it to enforce. *See Strauss*, 2016 WL 5107114, at *5.

In this case, despite Defendant's contention that "[t]he parties agreed to a specific list of terms in June and expressed to the Court that this case had settled[,]" *see* Dkt. No. 50 at 6, the specific list of terms to which Defendant refers does not satisfy the requirement that the court set forth in *Winston* that there should be nothing left to negotiate. The parties continued to make changes to the terms after the June 6, 2016 mediation session as the email comments and additional emails that the parties exchanged make clear. *See* Dkt. No. 47 at 5 n.1, 10-13.

Applying the applicable legal principles to the facts of this case leads the Court to the inescapable conclusion that there is no binding settlement agreement for the Court to enforce. Accordingly, the Court denies Defendant's cross-motion.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to reopen this action, *see* Dkt. No. 45, is **GRANTED**; and the Court further

**ORDERS** that Defendant's cross-motion to enforce the parties' settlement agreement, *see* Dkt. No. 46, is **DENIED** because no such agreement exists; and the Court further

**ORDERS** that, if Plaintiff wishes to file a motion for leave to amend its amended complaint,

Plaintiff shall do so within **twenty (20) days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendant shall file its opposition to any such motion within **fourteen (14) days** of the date on which Plaintiff files its motion; and the Court further

**ORDERS** that Plaintiff shall file its reply, if any, in further support of any such motion within **eight (8) days** of the date on which Defendant files its opposition to said motion; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Peebles for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: August 8, 2017
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge